May it please the Court, Judith Lott for the appellant, Nav Singh. The first issue I'd like to bring to this Court's attention is that the Board of Immigration Appeals in this case issued a de novo review. So we're not reviewing the 11-page immigration judge decision, but rather the one-paragraph Board of Immigration Judges decision. There's no de novo review. There's no Bourbano cite. There's no accepting the analysis of the IJ. Simply a de novo review raising two issues. The first issue is whether or not Mr. Singh was confused or inconsistent when he testified about the 1991 election cancellation. Page 6 of the Petitioner's Supplemental Opening Brief cites the testimony that Mr. Singh gave, and in the record his testimony appears at pages 115 and 116. I've argued then, and I argue again, that his testimony was completely consistent with both his declaration and the country condition documentation, which the judge seems to have taken administrative notice of, that the elections were cancelled two days before they were to be held. The immigration judge, or the Board, excuse me, the Board found that Mr. Singh's testimony was inconsistent because he said he didn't participate in the elections, and yet the word election and word campaign seem to have been interchanged both by the IJ below and by the Board above. You see, I'm not quite sure I understand that, because he was asked a series of questions before that, all of them having to do with whether he participated in the election. Right. And he manifested no confusion at all about whether election meant voting or whether the election meant the campaign, the whole deal. And so the bottom line here is that he only manifests confusion when he gets to 91 and says, well, I didn't participate. Then he changes his testimony and says, oh, well, yes, I did participate, and then he couldn't give any details about it. So you've got several layers of confusion there. Well, I would say that he was not confused until the immigration judge made him confused, because he was quite sure that he didn't participate in the election because it was canceled two years later. Well, I understand that, and I agree. He was quite sure. And then he said, oops, that's not a very good thing to be. I better switch and say now, oh, yes, I did participate. Well, I disagree because it was only when the immigration judge told him that he was not answering her question properly, he tried to give her the answer about it. But he thought she wanted. Well, it was only then that he realized the judge was talking about the campaign. Prior to that, nobody had said the word campaign. Okay. You understand the point I'm making. All the way prior to that, five different questions ask him whether he participated in the election. He said yes, and he answered the question as we would all assume him to have met, not that he participated by going to a ballot box. He said, what kind of a, did you participate in the election in India? And this was the 1989 one. Yes, I did. What did you do in this election? I would sing for people together, and I would tell people this and that. What other election did you participate? And he answered it. It's only when you get to 91 that he didn't understand that election meant something different from ballot box. Well, I agree with the Court, and I would argue that his response to the judge that he thought she wanted to know about the election and not about the campaign that led up to the election is a reasonable answer. And there's not enough in this that he was responding inconsistently with prior statements. The second point that the board has brought up is that allegedly there were some inconsistencies between what Mr. Singh testified to and two news articles in the record. Those articles appear in the record at page 488 and 491. Now, in reviewing those two newspaper articles, the board has brought up the fact that Mr. Singh, the immigration judge's conclusion simply is incorrect. The judge held, and the board, in this small area, the board seemed to uphold the immigration judge's analysis about the inconsistency between the testimony and the evidence in the record. But the judge has said that these news articles demonstrate that a terrorist was identified and that a terrorist was not. And if you read the article at 488, it doesn't say that a terrorist was identified, and it doesn't say that a terrorist was in custody. If you read the news article at 491, it doesn't say that a terrorist was identified or that a terrorist was in custody. And these are the only two issues that the Board of Immigration of Appeals found were sufficient to uphold an adverse credibility determination, thereby finding that Mr. Singh was not eligible for asylum. And we've already discussed in detail the campaign versus election issue. I believe that's insufficient on its own to uphold an adverse credibility determination. And with regard to the inconsistency between the testimony and the news articles, I think that both the immigration judge was clearly an error, and either the board didn't look at it carefully or also was an error in its decision. And I'll reserve the rest of my time for rebuttal. Mr. Bagley. May it please the Court. My name is Nicholas Bagley for the Attorney General of the United States. I'd like to start by addressing the first point made, which is that this was a de novo determination by the board. There's no evidence of that. Pursuant to regulations enacted in 2002, the board can do one of three things when it reviews an IJA's decision. It can convene a three-judge panel if there's novel issues of law. That didn't happen here. It can also streamline. It can just issue a straight-up, we agree with the IJA. Or it can do a third thing. Under 8 CFR 1003.1E5, a single board member can issue a decision, quote, affirming, modifying, or remanding the decision under review, end quote. The board in the Federal Register notice that accompanied these regulations stated that, quote, the parties in any reviewing court in such a case would be able to look at the combination of the immigration judge's opinion and the single member decision to understand the conclusions reached in the adjudication for those decisions. Accordingly, this court has held repeatedly that when it's unclear whether or not the board has applied de novo review, in those circumstances it's appropriate to look both to the IJA's decision and to the board's decision to make a, to figure out what exactly the agency did. And the site for that is Abitoba, El Aceva, and it's 213 F. 3rd, 1192. I should also note that the board in 2002 was stripped of its authority to review de novo at the credibility of the board. In 2002, they enacted 8 CFR 1003.1D3, and the board reviews factual determinations now, such as credibility determinations, for clear error. And I submit that it's very difficult to read the one paragraph board decision as being a comprehensive decision on credibility grounds. I think it's only fair to read that in light of the IJA decision. Turning now to the merits, I think that there are a number of grounds upon which the IJA's adverse credibility determination can be supported. Two that go straight to the heart of the matter and that feature prominently in her very thorough written opinion. The first is that Petitioner offered very general testimony about his past political participation, but was unable to provide anecdotal, detailed evidence about that participation. And there were several reasons to that that informed the IJA's determination that his lack of detail in his contradictions lent support to the notion that his testimony didn't have the stamp of truth. Second, and moving on, the IJA noted that Petitioner stated in his declaration that his father had been arrested in 1984 after Operation Blue Star. In his oral testimony, Petitioner claimed that his father had in fact been arrested in 1988 after Operation Black Thunder. When asked to explain the contradiction, Petitioner said only that sometimes people get confused or forget things. There are also two additional reasons that you could turn to to support the adverse credibility determination. The IJA noted that Petitioner had been convicted in 1998 of sexual battery, and Petitioner claimed that that arose out of an  First, Petitioner felt that the allegations that he made to the IJA were meant to be not particularly credible. She thought surely the allegation must have been something more severe to give rise to a charge of that seriousness. And second, Petitioner – she thought it very relevant that Petitioner could remember precise details of his various arrests, sometimes 14 years earlier, but couldn't remember where he lived over the course of the past five years. There was no real determination that these arrests did not take place. It's just kind of the detail about them. Is that correct? I think I wouldn't want to concede that. It was an adverse credibility determination as to all of his testimony. And with respect to the four arrests that the IJA said arose out of his political activities, she said, I just don't buy it. I just don't think you had that kind of political participation that would have led to these arrests. With respect to the other two, she said, look, if I believed you about the other four, maybe these would be enough, but I'm just left wondering whether or not you're telling me the truth with respect to anything. So she didn't say, I believe everything you said, but I don't believe you were arrested. She said, I'm just not buying your story. Well, that's not enough for her to do to say I'm not buying the story. Well, sure, but she pointed to a variety of details in his testimony that provided ample support for the determination that he wasn't testifying credibly about that past political participation. I should point first to his testimony that from 1992 to 1996, his political party didn't participate in any elections because they lacked the funds. And almost immediately he backtracked from that and he said, oh, wait, no, they did participate in some elections. And, in fact, I, too, participated in some of those elections. And the IJA, who was present to observe his demeanor and observe his testimony, said, look, you know, I think what you were trying to do was avoid responsibility for telling me what you did for that gap in time. You just didn't want to tell me. You didn't want to be caught in a lie. Second, the IJA pointed to the discrepancy discussed earlier between testimony about the 91 versus the 92 elections. And she said when she asked him about the 91 elections, she said he, quote, looked amazed on the stand. He was just shocked that this had come up. And in those circumstances, she said, my belief upon observing you, upon hearing your testimony, upon hearing or contradicting yourself about your participation in the 91 election was that these events weren't real to you. You hadn't participated in them. They weren't something that was a lived experience. Third, I think it's also important, and the IJA thought it was important, that Petitioner testified about various elections in which he had participated. And each time he testified about his activities, he used almost the exact same boilerplate. He said, I sang songs against the government. I advocated Khalistan. I sang about Operation Blue Star and Black Thunder and about the 25,000 Sikhs who were killed in 92 to 93. Each time he was asked about his participation in an election, that's what he said. The only details he provided were with respect to the arrests. Otherwise, his testimony was this vague gloss on his activities over that period. And in those circumstances, I submit that the IJA was perfectly reasonable in saying, I don't believe your story with respect to your past political participation. She didn't deal with whether his arrest for his problems here in the United States would be disqualifying. She just didn't deal with that, I guess. She didn't discuss it. So if the Court were to overturn the adverse credibility determination, you'd want, among other things, you'd want the Board to give that its first whack. If the Court has no further questions, the government requests that the petition be dismissed. Thank you. You know, the first attorney that represented this gentleman before the Court filed a brief in which he argued IJA or immigration judge prejudice. I think kind of the points that have been raised by the government go to that issue, that he wasn't inconsistent about how he was treated on arrest. There are passages in the immigration judge's decision where she almost makes fun of him for hitting too many hots. I don't have the site, but she says, oh, he's got political opinion, he's got religion, he's got imputed political opinion, almost as if the strength of his case is a reason to make fun of him or detract from the law that she was obligated to apply. To say she just didn't buy it may have been because of the fact that this gentleman had been arrested and she found him not to be a person deserving of discretion, but that's not what she found. Instead, she went on this wild goose chase of trying to find inconsistencies where they don't exist. And I want to quote from the Board decision on page 4. It says, we agree with the immigration judge that the respondent failed to rehabilitate his testimony with regards to the explanation that he was confused. We've already dealt with that, that's the 91 election testimony. Then it says, even if insufficient to sustain a sweeping adverse credibility under applicable circuit law, the weakness in the record provided the immigration judge with legitimate reason to conclude that the respondent's testimony alone was not sufficient to sustain the burden of proof. So what the Board is telling us is that under this circuit law, it's probably insufficient, his testimony about the 91 elections, it's probably insufficient to sustain a sweeping adverse credibility determination, but, you know, the record's weak, so we'll sustain it anyway. That's not proper analysis, because the next issue that they go to to determine the weakness of the record is the balancing of his testimony against the newspaper articles, and in my mind at least, the newspaper articles in his testimony are entirely consistent. So I would agree with the government that the immigration judge find it based on the fact that she just didn't buy it. But, you know, as the Court has pointed out, that's insufficient to sustain the adverse credibility determination, and I would ask this Court to overturn it. Thank you.
judges: Fletcher, Rymer, Duffy